UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CYNTHIA HARRIS-DEVAUGHN AND | ) | |
| JAMES DEVAUGHN, INDIVIDUALLY AND | ) | |
| AS PARENTS AND NEXT FRIENDS OF | ) | |
| JAYLA DEVAUGHN, A MINOR | ) | |
| 1821 H St. NE | ) | |
| Washington DC 20001 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | Civil Action No. |
| | ) | |
| SERVE: The Honorable Loretta Lynch | ) | |
| Attorney General | ) | |
| U.S. Department of Justice | ) | |
| 950 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| The Honorable Channing D. Phillips | ) | |
| U.S. Attorney for the | ) | |
| District of Columbia | ) | |
| 555 4th Street N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Comes now Plaintiffs Cynthia Harris-DeVaughn and James DeVaughn, Individually and as Parents and Next friends of Jayla DeVaughn, a Minor, by and through their attorneys ASHCRAFT & GEREL, LLP, and file this Complaint alleging as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction, under 28 U.S.C. §§1331, 1346(b)(1), and 2671 *et seq.*, over Plaintiffs' Federal Tort Claims Act claims.

2.  The District of Columbia is the proper venue for Plaintiff's Federal Tort Claims Act Complaint under 28 U.S.C. § 1402(b) because the acts and omissions constituting said claims occurred in the District of Columbia.

3.  Plaintiffs have fully complied with the provisions of 28 U.S.C. §2675 of the Federal Torts Claim Act. Plaintiffs served their Administrative Claims on the United States Government on January 11, 2013 through the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk, 9620 Maryland Avenue, Suite 205, Norfolk, VA 23511-2949. Said claims were denied by letter dated October 27, 2014. Plaintiffs made a request for reconsideration, pursuant to 28 CFR 14.9, by letter dated April 24, 2015. Said reconsideration was denied by letter dated June 3, 2015. All conditions precedent to a Federal Torts Claims Act Complaint have been met.

4.  Plaintiffs have fully complied with the provisions of District of Columbia Code §16-2802. Plaintiffs served their notification of intent to file the claims set forth below on the Department of the Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk, 9620 Maryland Avenue, Suite 205, Norfolk, VA 23511-2949. Said notice was served on January 11, 2013 pursuant to the Administrative Claims described above, and again on April 24, 2015 pursuant to the request for

reconsideration also described above. See *Brashear v United States*, 847 F.Supp.2d 41 (D.D.C. 2012).

## PARTIES

5. At all times relevant hereto, Plaintiffs Cynthia DeVaughn and James DeVaughn ("Plaintiffs") were adult citizens of the State of Maryland and/or the District of Columbia and the parents of Jayla DeVaughn.

6. At all times relevant hereto at the time of Jayla's medical treatment involved in this matter, Defendant United States of America ["USA"] employed Dr. Keith Alfieri, who was on active duty with the United States Navy and assigned to Children's Hospital ["Children's"] in the District of Columbia.

## STATEMENT OF FACTS

7. On January 26, 2011 Jayla DeVaughn underwent right distal fibular and tibular osteotomies, percutaneous Achilles lengthening, open plantar fascia release, and Taylor spatial frame application for Arthrogryposis at Children's. The primary surgeon was Laura Tosi, M.D. who was assisted by Keith Alfieri, M.D.

8. The post-operative order, written on the same day as surgery by Dr. Keith Alfieri, stated Jayla should be weight-bearing as tolerated on her right lower extremity that had undergone the above surgery. It is admitted in the post-operative medical records that this was negligent, since several times it is written that Jayla was not to be weight-bearing.

9.  Jayla has sustained serious and permanent physical and emotional injuries that, particularly to a young girl who was only 12 years old at the time of the initial surgery, are devastating.

10.  Jayla's mother lost her job because she had to care for Jayla during the year following the initial surgery.

11.  The negligence involved in these claims begins with Dr. Alfieri's post-operative order written on the same day as surgery at 15:18. Said order states "WBAT RLE" [weight-bearing as tolerated right lower extremity]. Weight-bearing was absolutely contraindicated following this surgery, and the writing of this order breached the standard of care. Jayla was to be non-weight bearing initially, but was not because of this negligent post-op order. This is confirmed in the operative report of March 2, 2011 which states "Unfortunately, there was miscommunication and she has been walking on the foot."

12. On 1/27/11 physical therapy questioned whether Jayla should be weight-bearing but Dr. Alfieri confirmed she should.

13. The negligence continued following the initial post-op order. On 1/28/11,  Dr. Alfieri wrote again the same mistaken order in his progress note: "wbat RLE."

14. This negligence caused Jayla's right lower extremity not to heal properly.

15. The note of 2/28/11 further explains this:  "our concern is the clinical alignment as we see her lower extremity today. We note bowing in the posterior direction in this right lower extremity. She also continues to have quite a bit of

swelling in that right foot which has been a consistent problem since her surgery. She still has diminished sensation in the R great toe. . . ."

16. It was planned for Jayla to go to the operating room on March 2, 2011 for a frame adjustment.

17. The 3/2/11 procedure was cancelled because Jayla's injuries from this negligence were so extensive. The operative note for that procedure states "[U]nfortunately, on careful inspection, it was clear that the blistering we had noticed about the foot from her walking really had created fracture blisters and there was concern about necrosis.  Therefore, the plan for the tib-fib osteotomy was cancelled."

18. On 3/4/11 Jayla had surgery to debride the problems that had developed because of the negligence. The operative note for that procedure states "[S]he developed fracture blisters about the lateral portion of her foot. In an effort to improve their care, the pins were removed 2 days prior to this; and she returned on this date for secondary debridement."

19. Jayla continued to need this surgery that had to be canceled on 3/2. It is described as urgent on 3/7/11. "PLAN: On Wednesday of this week, March 9th Jayla will return to the OR to have her urgently scheduled surgery, a tib-fib osteotomy with readjustment of her Taylor spatial frame." However she was still unable to have the surgery because of her "recent fracture blisters" as noted in the 3/9/11 operative note: "we noted that her recent fracture blisters had fibrotic

exudate and I was concerned about the bioburden. In this setting we only debrided her wounds."

20. Finally, on 4/22/11 Jayla was able to have her corrective surgery, which was a repeat of the 1/26/11 procedure. The injuries caused by the negligence are described again. "The frame was originally put on 3 months ago. After following her for a few months, it was noted that there was not adequate bony apposition, and the position of the foot even with adjustments through the Taylor Spatial Frame were not satisfactory."

21. Between April 2011 and July 2011, Jayla required adjustments to her struts by her mother at home. Unfortunately, even with these adjustments to the Taylor frame, on 7/13/11 Jayla returned to the OR for a readjustment of the Taylor frame due to her tibia being pulled into varus position.

22. At the post-op visit on 7/21/11 it was noted the Taylor frame's distal ring was against Jayla's Achilles tendon. The plan included a frame adjustment in the OR on 7/25/11 to correct this problem.

23. On 7/25/11, it is noted there was oozing at Jayla's pin sites. She was prescribed Keflex for 10 days with additional medications to be applied to her pin sites. The surgery planned for this date did not occur.

24. Jayla returned to the OR on 9/2/11. It is again noted the problems caused by the negligent weight-bearing order: "We have had a number of difficult challenges which included severe edema of the foot following her walking on it postop requiring removal of the frame from the foot and some loss of correction of her

cavus. Also the severity of her equinus required repeat procedures." The Taylor frame was removed and she was placed into a short leg cast.

25. Jayla was not allowed to fully weight bear until 10/31/11 when working with physical therapy. This was slightly more than 6 months after Jayla's repeat surgery on 4/22/11, meaning the earliest she should have been weight bearing after the 1/26/11 original procedure was early August, not immediately after. Jayla also was cleared to return to school, but had to use her crutches, wear her brace, and also wear extra-depth shoes.

26. At a clinic appointment on 11/28/11, Jayla's concern is noted about the significant scarring she has to her right lower leg. Mederma and avoidance of sun exposure for the scarring was prescribed.

27. By June 4, 2012 Jayla continued to have significant decreased range of motion. Jayla was instructed to wear her brace 24 hours a day, 7 days a week. Jayla also continued receiving physical therapy one day a week for the following 6 months.

28. On 8/12/13 Jayla continued to have issues with the inability to dorsiflex her right foot/ankle. She was still required to continue with her AFO brace.

29. By February 3, 2014 Jayla still had a severe equinus deformity on the right, causing her to suffer from right knee pain due to hyperextension of her knee with walking. It is noted that her left leg was longer than her right and therefore Jayla was provided with a heel wedge to adjust for this discrepancy. Jayla was to resume working with physical therapy for stretching and strengthening of her right leg, and also massage of her right foot and ankle.

30. During a clinic visit on 9/29/14 it was noted that at a previous appointment Jayla had eschar on her right heel which required new braces. Jayla was instructed to continue to wear her leg brace while at school.

31. Jayla continues to be followed and treated. She has not healed from this surgery done almost 5 years ago.

32. Jayla was 12 years old when the initial surgery took place. Teen-age years are difficult enough for a normal, uninjured girl, and were made significantly more so for Jayla because of the injuries caused by the negligence in this case. She has scarring, and had to wear a leg brace, which clearly made her "different" from the other girls her age. Jayla has not had a normal childhood, and a significant cause of that is this case. One example is not wearing a dress because of the significant and ugly scarring caused by the negligence in this case.

## COUNT I
### (Jayla DeVaughn)

33.  Plaintiffs incorporate by reference and reallege as though fully set forth herein all previous paragraphs.

34. The medical care and treatment rendered at all times pertinent to this Complaint by the USA, through its agents, recruits and employees including Keith Alfieri, M.D., breached the standard of care and was negligent because the Defendant:

> a.  failed to exercise the degree of care, skill and knowledge required at all times during the treatment of Jayla DeVaughn;

b. failed to recognize that Jayla DeVaughn should not have been weight-bearing as tolerated on her right lower extremity;

c. failed to properly diagnose the medical condition of Jayla DeVaughn;

d. failed to properly treat the medical condition of Jayla DeVaughn.;

e. failed to properly monitor the medical condition of Jayla DeVaughn.;

f. was otherwise negligent.

35. As a direct and proximate result of the negligence described above, Jayla DeVaughn suffered serious and permanent personal injuries and disfigurement.

36. As a further direct and proximate result of the negligence described above, Jayla DeVaughn has suffered and will continue to suffer into the future physical pain and mental anguish; has suffered and will continue to suffer into the future disfigurement, deformity, humiliation and embarrassment; has suffered and will continue to suffer into the future inconvenience and discomfort; has incurred and will incur in the future expenses for medical treatment; will suffer in the future loss of earnings and earning capacity; and has suffered and will continue to suffer in the future other injuries, damages and expenses.

## COUNT II
### (Cynthia Harris-DeVaughn and James DeVaughn)

37. Plaintiffs incorporate by reference and reallege as though fully set forth herein

all previous paragraphs.

38. As a direct and proximate result of the injuries and damages suffered by the minor Plaintiff Jayla DeVaughn., Plaintiffs Cynthia Harris-DeVaughn and James DeVaughn have suffered and will continue to suffer in the future mental anguish and emotional distress, have suffered and will continue to suffer in the future inconvenience and discomfort, have suffered and will continue to suffer in the future loss of earnings and earning capacity, have incurred and will incur in the future expenses for medical treatment, and have suffered and will continue to suffer in the future other injuries, damages and expenses.

WHEREFORE, Plaintiffs Cynthia Harris-DeVaughn and James DeVaughn, Individually and as Parents and Next friends of Jayla DeVaughn, a Minor, request that judgment be entered on their behalf against Defendant The United States of America, for Thirty Million Dollars ($30,000,000) for each of the claims set forth herein, plus the costs of this action, as well as such further and additional relief as the nature of the case may require and which this Honorable Court deems just and proper.

Respectfully submitted,

ASHCRAFT & GEREL, LLP

By: L. Palmer Foret, Esquire #260556
11300 Rockville Pike
Suite 1002
Rockville, MD  20852
(301) 770-3737 Telephone
(301) 881-6132 Facsimile
lpforet@ashcraftlaw.com
*Counsel for Plaintiff*