

FILED
MAR 20 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CYNTHIA HARRIS-DEVAUGHN and )
JAMES DEVAUGHN, individually and )
as parents and next friends of Jayla )
DeVaughn, a minor, )
)
Plaintiffs, )
)
v. ) Civil Case No. 15-2068 (RJL)
)
UNITED STATES OF AMERICA )
)
Defendant. )

## MEMORANDUM OPINION
(March 20, 2017) [Dkt. #14]

This is a medical malpractice case brought under the Federal Tort Claims Act for acts performed by a member of the U.S. Navy who was training as a medical resident. Plaintiffs are the parents of a girl who suffered a post-operative injury when she was under the care of the servicemember. They bring this suit on the theory of vicarious liability against the United States to recover damages from that injury. The question before the Court is whether an active duty member of the military who is employed as a full time medical resident is acting as a federal employee for the purpose of vicarious liability when he is rotating through an unaffiliated hospital. Defendant, the United States, says that the servicemember who allegedly breached the standard of care was a "borrowed servant" when he performed the care and so the vicarious liability properly attaches to the hospital where he was rotating, not to it. Defendant moves for summary

judgment on this legal issue, contending that the discovery the plaintiffs are seeking would neither inform nor alter the resolution of this issue. Upon consideration of the parties' pleadings, the employment contract at issue, the affidavit describing how medical residency training works, and the relevant case law, the defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiffs' daughter, Jayla DeVaughn, had orthopedic surgery at Children's National Medical Center ("Children's Hospital") to treat a congenital condition that affected, among other things, her right leg. Pls.' Resp. to Def.'s Statement of Material Facts ("Pls.' SOF") ¶¶ 1, 4 [Dkt. #17-1]. At that time, Dr. Keith Alfieri ("Alfieri"), an active duty Lieutenant Commander in the U.S. Navy, was on a two-month rotation at Children's Hospital as part of his residency training program in orthopedic surgery. *See* Decl. of Jerri Curtis, M.D., Ex 1. to Def.'s Mot. for Summary Judgment ("Curtis Decl.") ¶ 4 [Dkt. #14-3]; *see also id.* at ECF p. 7 (referring to the agreement between the "National Capital Consortium, Residency in Orthopaedic Surgey" and Children's Hospital). Alfieri assisted the attending orthopedic surgeon in delivering DeVaughn's care. Pls.' SOF ¶ 3. Plaintiffs allege, and the Court accepts for the purpose of deciding this motion, that Alfieri told DeVaughn she was allowed to use her right leg in weight-bearing activities if she could tolerate it. *Id.* at ¶ 7; Compl. ¶¶ 8, 11-14 [Dkt. #1]. This post-operative instruction, plaintiffs allege, was negligent and caused DeVaughn's right leg to heal improperly from surgery. Compl. ¶¶12-14.

Alfieri was an employee of the United States while he was rotating through Children's Hospital. Pls.' SOF ¶ 21. His paycheck came from the U.S. Navy and his assignment was to complete an orthopedic surgery residency program run by the National Capital Consortium (NCC), a "joint military service activity" designed to provide graduate medical education and training to servicemembers. *See id.* at ¶¶ 13, 21; Curtis Decl. ¶ 1. The NCC had contracted with Children's Hospital in order to ensure that its orthopedic surgery residents would receive the training in pediatric orthopedics that is necessary to meet graduate medical education standards. *See* Curtis Decl. ¶¶ 6, 9; *see also id.* at Attachment 1, Attachment 2. Although the NCC retained "overall responsibility for the planning and implementation of a Rotator's training in accordance with the Program's goals and objectives," *id.* at Attachment 2, § 1.0(a), Children's Hospital was responsible for the resident's "education, supervision, and evaluation" while he was rotating through the two-month pediatric orthopedics rotation. *Id.* at Attachment 1, ¶ 1; *see also id.* at Attachment 2, § 2.0(c). The agreement between the NCC and Children's Hospital explicitly contemplates that residents, while working at Children's Hospital

> remain employees of the United States performing duties within the course and scope of their Federal employment. Consequently, the provision of the Federal Tort Claims Act [], including its defense and immunities, will apply to allegations of negligence or wrongful acts or omissions by [residents] while acting within the scope of their duties pursuant to this agreement.

*Id.* at Attachment 2, § 1.0(j). The NCC also agreed to "provide professional liability coverage . . . for claims arising out of [the residents'] activities while participating in the training at [Children's Hospital]." *Id.* at § 1.0(k).

## STANDARD OF REVIEW

The parties agree that the United States is entitled to judgment under the FTCA if Alfieri was acting as a "borrowed servant" when he was employed by the Navy. They do not agree, however, whether it should be the Court or the jury that decides if Alfieri was acting as a borrowed servant. Unfortunately for the DeVaughns, the question of which legal label to apply to an undisputed set of facts is one for the Court. *Union Light & Power Co. v. D.C. Dep't of Emp't Servs.*, 796 A.2d 665, 669 (D.C. 2002) (lent or borrowed employment status may be decided "as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact"); *see also Dellums v. Powell*, 566 F.2d 216, 220-21 (D.C. Cir. 1977). And because there is no dispute about how Alfieri's work was managed when he was caring for the DeVaughns' daughter, or for that matter about the terms of the agreement between the NCC and Children's Hospital, the question of whether Alfieri met the legal standard for a borrowed servant can, and should, be settled at summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (summary judgment meant to resolve actions in a "just, speedy, and inexpensive" way).[1]

---

[1] The DeVaughns move, pursuant to FED. R. CIV. P. 56(d), for additional discovery that they say will be "probative of the duties and responsibilities of Dr. Alfieri and the nature of his relationship with defendant and Children's." Pls.' Aff. of Counsel Pursuant to F.R.C.P. 56(d) ¶ 8 [Dkt. #17-4]. A court

4

## ANALYSIS

District of Columbia law governs whether Alfieri was a "borrowed servant" of Children's Hospital for the purpose of vicarious liability and the applicable test is whether the borrowing employer had the "power to control and direct [the employee] in the performance of [his] work." *Dellums v. Powell*, 566 F.2d 216, 221 (D.C. Cir. 1997). Moreover, the United States is due judgment in its favor only if it can also show that the NCC had relinquished control of Alfieri's work and was not a joint master *with* Children's Hospital. *Dellums v. Powell*, 566 F.2d 216, 221 (D.C. Cir. 1997). In other words, the general employer remains liable for the employee if "he is performing the business entrusted to him by the general employer" even if "service [is also] rendered [to] another." *Dellums v. Powell*, 566 F.2d 216, 221 (D.C. Cir. 1977). For the following reasons, I conclude that Children's Hospital was the exclusive master of Alfieri here.

The District of Columbia courts have addressed the question of what it means to "control and direct" a borrowed employee mostly in the context of worker's compensation, where the "control and direct" test is one of the factors for determining whether a general or special employer should bear the burden of worker's compensation.

---

should grant a Rule 56(d) request only if the evidence sought is "necessary to resolve the summary judgment motion." *Moore v. United States.* 213 F.3d 705, 710 n.3 (D.C. Cir. 2000); *see also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (evidence sought must be "necessary to the litigation"). Here, plaintiffs do not contend that the NCC or the Navy played any day-to-day role in assigning, evaluating, or supervising Alfieri's work while he was on rotation with Children's Hospital. Any other details about the nature of Alfieri's relationship with defendant are not necessary to resolve the dispositive question before the Court. Accordingly, I deny plaintiffs' request for additional discovery.

Indeed, in one relatively recent such case, the D.C. Court of Appeals found the "control and direct" test was met when a waste management company borrowed an employee from a temp agency. *USA Waste of Maryland, Inc. v. Love*, 954 A.2d 1027, 1035 (D.C. 2008). It was dispositive that the waste company controlled day-to-day details such as "the collection routes to be followed, the hours worked, the equipment used, and the specific manner of performance." *Id.* (quotation marks and alterations omitted). Furthermore, it was notable to the court there that, the employee "was indistinguishable from a regular employee . . . doing the same work." *Id.* There is no question here that Children's Hospital controlled similar details of Alfieri's work.

Children's Hospital had sole control to assign Alfieri's shifts, to determine what patients he saw, and to provide the equipment he used. Pls.' SOF ¶¶ 16, 18. In fact he was "removed from the Navy service environment" altogether. *Id.* at ¶ 21; Curtis Decl. ¶ 7. Moreover, it is clear from the record that Alfieri was providing care to Children's Hospital patients, and generating revenue for Children's Hospital, only. Pls.' SOF ¶ 20. And of course, it was also Children's Hospital's responsibility to ensure that its attending physicians supervised the care Alfieri provided to patients while on his two-month rotation, including the care he provided to Jayla DeVaughn. Curtis Decl. at Attachment 1, ¶ 1; *see also* Compl. ¶ 7. As such, plaintiffs do not contest, nor could they, that Alfieri was indistinguishable from a Children's Hospital resident in all these ways.

Instead, the DeVaughns argue that the NCC retained at least partial control over Alfieri because, while rotating, he remained responsible for adequately completing his

residency training under the graduate medical education standards supervised by the NCC. *See* Pls.' SOF ¶¶ 6, 21. As such, they contend, Children's Hospital was not Alfieri's "sole master," but a "joint master" with the United States. I disagree. Having such ultimate responsibility for multi-year goals is irrelevant to the question of control and direction. The NCC had no interaction with Alfieri's work for the two months that he was rotating. Rather, the NCC's role was limited to advance planning: assigning residents to Children's Hospital so that they could learn in that unique environment and agreeing with Children's Hospital that residents would work toward certain educational objectives. Indeed, the very purpose of such an arrangement is to ensure that the NCC need *not* exercise any day-to-day control or direction while its residents are staffed at Children's Hospital. As such, it is beyond question that it was Children's Hospital, not the NCC, that directed and controlled the details of Alfieri's medical practice while he was rotating at Children's Hospital.[2]

Finally, the text of the agreement between the NCC and Children's Hospital does not alter my conclusion that Alfieri was a borrowed servant. To be sure, the NCC and

---

[2] It is also worth noting that all the courts that have addressed the question whether a medical resident rotating at an independent hospital is a borrowed servant have answered in the affirmative. *See McBee v. United States*, 101 Fed. App'x 5 (5th Cir. 2004); *Banks v. United States*, 623 F. Supp. 2d 751 (S.D. Miss. 2009); *Spriggs v. Sirinek*, 402 F. Supp. 2d 739 (W.D. Tex. 2004). Of course, plaintiffs point to a case from this jurisdiction, *Dower v. Davis*, 1987 WL 12847, Case No. 86-cv-2658 (D.D.C. July 28, 1987), in which the defendant asked the court to resolve the question of whether a resident on rotation at another hospital was a "borrowed servant," and the court demurred and reserved that question for the jury. I will not follow that example because in this case there is no doubt about how the day-to-day delivery of medical care worked for Alfieri while he was rotating at Children's Hospital.

Children's Hospital anticipated that the United States might be liable in an FTCA suit for acts of negligence performed by NCC residents rotating at Children's Hospital. But that private understanding does not change the law of how to determine vicarious liability. Moreover, it does not purport to prescribe who will actually control a resident in any particular situation. In fact, the agreement anticipated all relevant defenses to the FTCA, which necessarily includes the borrowed servant doctrine. And it is well-settled, of course, that a court must look beyond the text of a contract to see who actually exercised control of an agent when determining who is liable for that agent's acts. *See Schecter v. Merchs Home Delivery, Inc.*, 892 A.2d 415, 423 (D.C. 2006) ("The language of the agreement is not conclusive."); *see also Spriggs*, 402 F. Supp. 2d at 743-44 (nearly identical contract language in military medical resident contract not dispositive) (citing *Palmer v. Flaggman,* 93 F.3d 196, 199-201 (5th Cir. 1996)). Additionally, it is irrelevant that the NCC provided medical malpractice insurance for its residents while rotating at Children's Hospital. That fact only raises a question about who should indemnify whom if the DeVaughns ultimately prevail against a correct defendant. For now, I need only conclude that the United States is not a correct defendant.

## CONCLUSION

For the foregoing reasons, defendant the United States may not be held liable for the medical care Dr. Keith Alfieri provided to the plaintiffs' daughter. Accordingly, the

United States' Motion for Summary Judgment is GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

 

/s/ *Richard J. Leon*
RICHARD J. LEON
United States District Judge